Good morning. May it please the Court, Emily Quatto, on behalf of Travelers, I aim to reserve three minutes. Travelers has no duty to defend SalesForce and the underlying Texas MDL litigation, because that litigation can have only one of two possible outcomes. Either SalesForce can win and there will be no covered indemnity, or SalesForce will lose on the ground that it engaged in knowing or intentional conduct that was inherently harmful and violated the plaintiff's rights. Any damages would be outside the scope of coverage for damages caused by accident, and in any event would be excluded from coverage as being damages for expected injury and knowing violations of the plaintiff's human rights. Where none of the possible outcomes of an underlying action would lead to the payment of covered damages, there is no potential for indemnity under the policy. And absent a potential for indemnity, there is no duty to defend. It's a simple analysis. General liability insurance doesn't cover aiding and abetting sex trafficking. The District Court concluded there was a duty to defend and dismissed Travelers' declaratory relief action for two erroneous reasons. First, it thought plaintiffs could seek recovery for mere negligence, which was part of their initial pleading. Second, it thought SalesForce might defend itself by proving it was merely negligent, citing Gray v. Zurich. Let me take the first ground first, that plaintiffs might reassert their negligence claims. That was not true when the motion to dismiss was decided, given that plaintiffs had abandoned their negligence claims. And it's even more clearly true now, after the Texas Supreme Court's decision... Would you concede that if they were, you know, if we were to rule, and then a month later they were to amend their complaint and put back the negligence claims, you'd be back in having to defend? The negligence claims were originally part of the claim, and Travelers defended that action. But that's speculative. But if that were to happen, and they were to amend, and the Texas court, MDL court, would allow them to do that, then you'd have to defend that suit from that point forward, correct? From that point forward, correct. But that's speculative as of today. It's extremely speculative. But it's a potential theory of liability that arises from the facts, and that has, in fact, previously been asserted in the case. So to that extent, it's not entirely speculative. It is speculative at this point. And the way that you determine the duty to defend is by looking at the complaint as it stands and the causes of action alleged in the complaint. So is your argument that the Texas statute cannot trigger liability for purposes of duty to defend? It is, yes. The Texas statutes require. So 98A.002A talks about it prohibits compelling prostitution. That seems like it would probably fall outside of the policy. Or knowingly or intentionally promoting prostitution that results in compelled prostitution. So it seems like that one might leave open the door for coverage under the policy, and I want to know why you think that's not true. Because you can't knowingly engage in the promotion of prostitution accidentally. It's not something that happens accidentally. And in order to knowingly engage in the promotion of prostitution with prostitution resulting, the outcome is going to be. No, it's not prostitution resulting. It's compelled prostitution resulting. That's what this Texas statute about trafficking is all about. It's the compelled prostitution, not just prostitution generally. And so that provision talks about maybe you understand that prostitution is going on and you're assisting in some way in that activity without actually knowing that the result is going to be trafficking. But it still requires knowing or intentionally engaging in an activity that promotes what ultimately would be compelling prostitution. And once we're talking about knowing or intentional conduct of any sort, it's simply not accidental. My understanding of California law on this point is that for knowing and intentional, it's both the act that you do and the consequence that's going to result from that act. And so as I read that provision, for sure the standard is met for the act that's being done by Salesforce. What I'm struggling with is it seems that there's a possibility under that statutory scheme where liability could be established without Salesforce understanding the consequence of their understood action. Well, the consequence of their action is going to be the promotion of prostitution. They know they're engaged in that activity. But that is not what this statute criminalizes. It criminalizes things that result in compelled prostitution, which is something different. But the compelled prostitution is inherent in the knowing and intentional promotion of that activity. I don't think the statute will allow criminalization of activities where there is not an overt act designed to compel that activity. The problem is we don't yet have a ruling from a Texas state court actually saying what the knowing and intentional modifies and limiting it, as you're suggesting. The case law that you've cited doesn't squarely address that issue. So I think it's at least an open question of Texas law still. Well, I think that Texas law in In Refacebook is clear that these statutes cannot be used to criminalize something that is merely passive acquiescence in conduct that is not allowed. It has to be an overt act that constitutes the actor's own wrongdoing. And so at the point, that is how the statutes have been interpreted by the Texas Supreme Court. The type of conduct that gets past Section 230 that isn't preempted, that can give rise to liability, is the type of conduct that's going to fall outside of coverage because it has to be an overt act done with the purpose of achieving the sex trafficking activities. I think that's the leap that you're making from the Texas Supreme Court case that is not actually in the Texas Supreme Court case. Yes, the court said there has to be an overt act, but as far as I read the case, they don't also say that the knowledge and intent has to be to the ultimate effect. They're addressing overt act only, and they just don't reach, I think, the interpretive question that you're asking us to assume here to say that there's no possibility. I disagree because the way that the Texas Supreme Court phrases it is that it's overt acts designed to aid in the success of the venture. You can't have conduct that is designed to aid in the success of the venture without having knowledge or intent and purpose that the harm will result. Well, I guess to put a finer point on it, let's say there was a knowledge and intent to aid in the Internet Service's venture of promoting prostitution, but what they didn't know was that there was going to be compelled prostitution. They were negligent or grossly negligent as to that effect. I don't see anything in the Supreme Court's decision as to foreclosing that possible interpretation of the statute. Well, by expressly distinguishing cases based on negligence, gross negligence, negligent undertaking, and products liability, the Texas Supreme Court draws a line between the types of cases that can rise to liability under the statutes and those that can't. And it draws that line because it needs to in order to avoid preemption under Section 230. And so by distinguishing between negligence and the types of claims that are involved under the Texas sex trafficking statutes, I think the court does reach that holding. It says negligence is never going to be enough. Mere passive acquiescence is not going to be enough. It has to be affirmative misdeeds that engage in the activity. Why does that reasoning apply here where we don't have a Section 230 issue given how this case is pled? Well, the plaintiffs specifically avoid Section 230. Right. That's my point. That's what they say. And they do that because they need to avoid anything that would result in preemption. So they are trying to proceed on a very narrow claim. And by pleading their case in that way, in order to avoid any sort of preemption issue, they are walking themselves into Facebook's distinction between negligence and intentional conduct. And I think if you look, you know, Salesforce has asked this court to take judicial notice of even the most recent amended petition, which goes even further to allege very specific affirmative conduct designed to aid in the success of the venture. And it's not just that the negligence claims, you know, haven't been alleged. They were specifically disclaimed. And it's speculative to say they'll be added. And an additional case I would point to, in addition to Gunderson cited in the briefing, is Lowe v. Golden Eagle, 99 Cal App 4, 109, at pages 113 to 114. And in that case, it involved a class action where there were facts that would have supported a negligence claim for bodily injury. But because it was pled as a class action, specifically in order to proceed on a class-wide basis, the California Court of Appeal held it would be speculative to say that that complaint would be amended to allege a covered claim because of the way that it was pleaded strategically to maintain it as a class action. And I think the same is true here. The plaintiffs here have specifically pleaded their complaint in a way to avoid Section 230. That means that they are not going to be proceeding with claims that are based on mere negligence. It has to be based on conduct that is inherently non-accidental and with knowledge that the harm was occurring. I mean, to be sure, the plaintiffs may not be able to prove their allegations that Salesforce was a knowing participant. But those allegations are present in the complaint in order to make it survive dismissal. They are an inherent part of the claim. And they can't just be disregarded in analyzing the duty to defend. Because it's the allegations in the complaint and the claims that are raised that have to be compared to the terms of the policy. So, I mean, one of the statutes here applies to someone who knowingly benefits from participating in a venture that traffics another person, and that would be the standard. We don't really know how broadly the Texas courts will apply that. I mean, suppose it's notorious. Everyone says, you know, and it's all over the news, that Backpage is doing X, Y, and Z. If you're the electric company that supplies the power that runs Backpage's computers, are you now subject under the Texas statute? And would there be no coverage? Because then you're supplying the electricity. That's now intentional. I mean, we don't really know the scope of how these lines are going to get drawn. I think we do know how they're going to get drawn because the Texas Supreme Court has spoken and interpreted the statutes to say that they require overt acts designed to aid in the success of a venture. And that type of conduct is simply— The overt act of flipping the switch so the power runs through the building. But with the design of making sure that that venture succeeds. So simply turning on the switch is not going to be enough. Turning on the switch because— But we also have the doctrine that people intend and desire the foreseeable consequences of their conduct. And you know when you flip that switch, the power is going to run through the computers, and now it's going to—so you want it to happen. And ladies and gentlemen, that's what they'll argue. And so how do we know that that's really intentional in the way that would defeat coverage but won't result in liability in the Texas courts? Because the Texas courts have said that it requires an overt act designed to achieve the ultimate goal of the sex trafficking or of the compelled prostitution. And because that level of intent is required, that is never going to be within the scope of coverage for an accident, for general liability coverage. Even though, you know, the Texas Supreme Court— So do you think in my hypothetical, if you were the insurer of the electric company, that you wouldn't have—that you would defeat coverage there too? If the sole basis for the complaint was violation of these two sex trafficking statutes, I would say yes. There is no duty to defend for claims raised under these two statutes. So even if they are found liable in the Texas court just for supplying the building with electricity, you'd say, well, not covered because that's intentional. I don't think that's a reasonable reading of the statute. I think the plaintiffs in that case would have to prove more. They would have to prove a degree of intentionality that exceeds what you're talking about. If I may, I would like to reserve the rest of my time. Okay, thanks. All right, we will hear now from Mr. Davidson. May it please the Court, Jeffrey Davidson, Covington & Berlin, on behalf of Salesforce. There are three black-letter California Supreme Court holdings that establish a duty to defend under the circumstances of this case. The first is that the insurer must defend if there is any possibility or potential for coverage. In order to escape its duty to defend, travelers would have to rule out every possibility of a covered outcome. The second core principle is that to determine whether there is a possibility of coverage, you look only to the facts alleged in the complaint and not the theories of recovery. And that's because the theories of recovery are malleable, they're amendable, they're subject to change as the litigation unfolds. Sorry, counsel, I don't want to interrupt, but on that point, can you address their citation to Golden Eagle? Because I think they're saying that's sort of an exception to that rule. I agree with you. The rule is we look at the facts, not the claims alleged. And the district court basically said, because they could add back in the negligence claim, there's still a possibility of coverage. But they're citing Golden Eagle saying, well, but here they strategically dropped negligence, so therefore that rule doesn't apply. So Lowe v. Golden Eagle, and I would put it in the same category as the Gunderson case that they also like, are situations where the potential for coverage is a matter of mere speculation. So in the Gunderson case, for example, there were no covered claims in the lawsuit. Everyone agreed on that. But the insured said, well, there's this factual situation out there where there was damage to the fence, right? There was physical injury out there. And who knows? Maybe the plaintiffs could amend their complaint to talk about the fence injury, and then I would have coverage. So it's that kind of speculation. Lowe v. Golden Eagle, very similar case. That's a class action situation where the plaintiffs had specifically said, we're not alleging bodily injury, we're never going to allege bodily injury. This case and this court made exactly that. But why isn't that somewhat analogous here? I went back and looked at the complaint again this morning, and the MDL plaintiffs in three different paragraphs specifically allege that Salesforce knew Backpage was not only involved in prostitution but trafficking. So if that's the underlying plaintiff's allegations, why doesn't that take you out of coverage? So there are allegations of intent on the scene, and as the California Supreme Court has held on this exact point, the fact that there are some allegations of intentional conduct is irrelevant. In fact, in Gray v. Zurek What are the paragraphs that we should rely on to say that the plaintiffs are also alleging something less than intent or knowing? So there's a few things I would point you to. First, the very same factual allegations that are in this complaint today were previously used to support an explicit claim for negligence. Yes, but you just told us that the black letter law in California is about facts alleged and not theories alleged. So we set aside what the claims are, and I want to know what are the paragraphs in the complaint that factually say that Salesforce had something less than knowledge or intent with regard to trafficking? So the first place I would point you to is Excerpt of Record 277, paragraphs 72 and 75. Those are the would-have-known allegations. They say that it was open and notorious that Backpage was involved in sex trafficking, and a simple Google search would have confirmed as much. Those are negligence-type allegations specifically, but I would also say in general, the allegations of the complaint are not that Salesforce intended to take part in compelled sex trafficking. To Judge Collins's point, one of the statutory claims that is advanced in the underlying litigation is under 98.002. That's the knowingly benefit section. And travelers in Salesforce may disagree with this, but what the plaintiffs are saying is that that knowingly benefit statute can be satisfied even if the defendant has no intention to participate in sex trafficking. And I would specifically point you to our motion for judicial notice, Exhibit K. Let me quote from what the plaintiffs said to the Texas Court of Appeals. They said, quote, The standard for Chapter 98 claims does not require a plaintiff to show that the defendant furthered the sex trafficking aspect of the venture. So they are telling the Texas courts, rightly or wrongly, that the statute can be satisfied without the type of intent to injure that would be required for Salesforce. So here's one example that I'm looking at. I think there's three specific paragraphs. One of them is paragraph 50. During all relevant times, Salesforce knew Backpage was in the business of selling sex through prostitution and the sex trafficking of minors and adults. So your argument is we shouldn't rely on that as definitive because new is a legal term and it means something other than ordinary knowledge. I'm making actually less of a claim than that. There are intent allegations there, truthful or not. What I'm saying is if there are also negligence allegations, allegations that could potentially support a claim for non-intentional conduct, that's enough for there to be coverage. And I would point the court to Gray v. Zurich, fundamental foundational case. That's a case, it was a bar fight scenario, and the allegations in that complaint were only of intentional misconduct and only intentional torts were alleged. But the California Supreme Court recognized that, and I'll quote this, Plaintiffs often stretch the action which lies only in non-intentional conduct to the dramatic complaint that alleges intentional misconduct. That's 65, cal second, 263, and the page is 276. But the California Supreme Court said, the mere fact that there may be this stretch to allege intentional conduct does not make the plaintiff the arbiter of insurance coverage. Instead, if the factual allegations could be used to support non-intentional conduct, that's enough to trigger the insurer's duty to defend. You know, Travelers has this construct, which we saw in the opening brief and the reply brief and again today. They say there's only two possibilities in the Texas case. Either Salesforce will be held liable for intent to injure, or it will be held not liable. And they say that with great confidence. Those are the only two possibilities that exist. And I would say that construct fails for a couple of reasons. The first is that there are other possibilities. One is that Salesforce could be held liable for non-intentional conduct. That could either happen because somebody interprets the Texas statute not to require intentional misconduct, or because the plaintiffs will restore their negligence claims, which have never been adjudicated by any court, or they may assert other claims that don't require intentional misconduct. So that's a possibility that by itself creates the potential for coverage. And then the second thing... And what would be your first of the possible options? What would be the scenario... Describe the scenario in which you could be held liable for non-intentional conduct. Yeah, so the plaintiffs are... Even without amending the claims. Right. So the plaintiffs... And this was after In Re Facebook in the Texas Supreme Court. And these are papers that we included in our request for judicial notice. And you could look at Exhibit M at pages 23 to 24. They are telling the Texas Supreme Court, we do not need to show an intent to further the sex trafficking aspect of the venture. So they are saying, rightly or wrongly, to the Texas Supreme Court, that the utility company would be liable for violating the statute. That type of scenario. Based on knowledge. The statute says, knowingly benefit from participation in a sex trafficking venture. And the legal debate is, does the knowingly just refer to the benefit, like I intend to get software licensing fees, or does the knowingly go all the way to the end of the sentence? That's a legal debate that is happening in the Texas courts right now. And the fact that plaintiffs are taking the non-intentional side of that debate is enough to create a potential for coverage that requires the insurer to defend. Just to break down the traveler's construct in one other way. The other possibility they present is to say, Salesforce might not be held liable. They might be able to prove that they did not intend any wrongdoing. So that's the scenario where Salesforce wins because the plaintiffs have misstated the facts or the law. In that scenario, travelers need to defend. Travelers need to defend claims, even if they are legally or factually groundless. And I would point the court to the California Supreme Court's holding in Horace Mann Insurance Company v. Barbara B. for Cal Fourth 1076, and the page number is 1086. There, what the Supreme Court says is that if the pleading is a sham, the underlying pleading, that still the insurer can demur or obtain summary judgment on the insured's behalf in the underlying case. That was said even more forcefully in a case called Garriott Cropdusting from the California Court of Appeal 221 Cal App 3rd 783. There, there was a great statute of limitations defense. And the insurer said, there's no possibility you'll be held liable because the statute of limitations exists. And what the court said is that if that's the case, if the insurer thinks that there's a great statute of limitations defense, they should, quote, raise the limitations defense in the substantive action for Garriott's benefit, that was the policyholder, rather than in the instant insurance coverage action to Garriott's detriment. So if travelers thinks that Salesforce has a great defense to the underlying liability because it didn't have the relevant intent, that means they're supposed to defend. They're supposed to be with us there fighting shoulder to shoulder to defend the underlying claims, not abandoning us because they think there's a viable defense. To the underlying claims. If there are no other questions, I would just note that as the California Supreme Court held in the Montrose case, the receipt of a defense is typically as important a consideration for purchasing coverage as to protect from underlying liability. California's substantive law, as articulated by the California Supreme Court, makes it extremely difficult, and rightly so, for an insurer to do what Travelers is trying to do here, which is to abandon its defense in the middle of the underlying case while there remains a potential for covered liability. The district court got it exactly right in dismissing Travelers' complaint, and this court should affirm. Thank you. Thank you, counsel. Your rebuttal now. Thank you. Nothing in the complaint uses the should-have-known standard, and although Salesforce quotes that, it's nowhere in there. Salesforce points to page 277 of the record. That's the initial pleading, not the pleading we're talking about now. And I would go even further and read paragraph 52 that says not just knowledge, actual knowledge. Those are the allegations that are alleged against Salesforce in this case. And at the end of the day, the contractual obligation to defend is still defined by the nature of the risks covered by the policy. Aiding and abetting sex trafficking, as these statutes are interpreted by the Texas Supreme Court, is not within the scope of general liability coverage. Salesforce cites Gray, but that case is distinguishable for two really important reasons. The first is that Gray did not involve coverage language that limited coverage where the cause had to be an accident. It just covered all bodily injury that was caused by any cause. The California Supreme Court's more recent decision in Delgado makes very clear that when you have accident language in the coverage clause, intentional conduct is not covered. Also, the policy in Gray excluded intentionally caused injuries. This policy excludes injuries that were expected. The allegations against Salesforce cannot be read in any way other than that Salesforce expected the compelled prostitution in the sex trafficking. That's what the case is about. What do you do with footnote 37 in the complaint? In the complaint. I can read it to you. To the extent Salesforce argues it did not know of Backpage's role in human trafficking, with which plaintiffs disagree, Backpage's facilitation of prostitution was known. That type of allegation is what the plaintiffs are alleging and what they must prove in order to prevail. That's why they dropped that footnote. Right, but why doesn't that trigger sort of a new or should have known or at least a non-intentional? I mean, this goes to my first argument or some of my first questions in your first argument about you can intend or know your act and maybe not the consequences, and it seems like under this Texas statute liability can exist even if you didn't fully understand the consequence, if the consequence was compelled prostitution. I disagree that that's the way that the Texas Supreme Court is reading the statute by saying that it requires intentional, that knowingly applies to every aspect of the sentence in the statute because that's how the statutes have to be interpreted to avoid negligence liability. So if we disagree with your interpretation of the Texas statute or at least think that there's a possibility that it could be read a different way, then where does that leave you? I think that I disagree that the statute should be read that way. I understand that, but I'm asking you to assume something else. If the allegations in the complaint still allege knowing and intentional conduct, and I don't think that there's anything in the complaint that can be read to say that they're seeking to impose liability on Salesforce, so I think there's no duty to defend under the language of the policy. I mean, at the end of the day, this is a contractual dispute over what the policy provides, and general liability insurance is not intended to cover stuff like this. It is intended to cover accidents, and that's why Travelers originally defended. But once the claims were narrowed to what they are now, on the factual basis that they are now, there is no longer a duty to defend. And I think that result is compelled by the language of the policy. It's compelled by cases like Delgado and Drazen, which makes clear that if there's an element of intentionality in the claim, there is no duty to defend. And as a result, not only is there no duty to defend, there will never be a duty for indemnity, and so reversal with directions is the correct result. All right. Thank you, counsel. The case just argued will be submitted for decision.
judges: COLLINS, FORREST, SUNG